United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LORD ABBETT MUNICIPAL INCOME FUND, INC., *et al.*,

    Plaintiffs,

v.

JOANN ASAMI, *et al.*,

    Defendants.
_____/

No. C 12-03694 DMR

**ORDER DENYING MOTION TO DISMISS**

Before the court is Defendants' motion to dismiss, or in the alternative, for summary judgment. [Docket No. 11.] The court conducted a hearing on October 25, 2012, at which the parties were represented by counsel. For the following reasons, Defendants' motion is DENIED.

**I. Background**

Plaintiff Lord Abbett Municipal Income Fund, Inc., on behalf of its series Lord Abbett High Yield Municipal Bond Fund, Lord Abbett National Tax-free Income Fund and Lord Abbett California Tax-Free Income Fund (collectively, "Plaintiff" or "Lord Abbett"), is a mutual fund headquartered in New Jersey. (Compl. ¶¶ 1-3.) Defendants JoAnn Asami, R. Thomas Beach, Natasha Beery, Jane Breyer, Jennifer Lowe Campbell, Oren Cheyette, Sarah Clugg, Orpheus Crutchfield, Lynn De Jonghe, Roz Hamar, Natalie Lenz-Acuna, Jon McPherson, Tim Moppin, Gina Moreland, Joanne Rubio, Jennifer Curry Villaneuve, Andrew Weill, and Valerie McCann Woodson (collectively, "Defendants" or "Board Members") were members of the Board of Trustees of

Windrush School ("Windrush"), a private school located in El Cerrito, California. (Compl. ¶¶ 4-20.)

Plaintiff alleges the following facts, all of which the court must assume as true for purposes of ruling on a motion to dismiss the complaint.[1] In 2007, Windrush sought to renovate and expand its facilities. (Compl. ¶ 39.) To fund the renovation and expansion, Defendants authorized Windrush to seek financing for the expansion through the issuance of $13 million in bonds, which were secured by a mortgage on the school facility and were to be repaid from the payment of tuition, gifts and grants. (Compl. ¶¶ 24, 40.) The bonds were issued pursuant to a prospectus called a Preliminary Official Statement and Official Statement ("OS"), which, as a securities disclosure document, was required to completely and accurately disclose all material facts. (Compl. ¶¶ 24, 26.) Lord Abbett relied upon the OS in deciding to purchase over $9 million of the bonds. (Compl. ¶¶ 36, 60, 69.)

According to Lord Abbett, the OS omitted key material facts bearing directly on Windrush's ability to repay the bonds. (Compl. ¶ 36.) Specifically, Windrush was dependent on a Bay Area charitable organization called Making Waves Foundation ("Making Waves"), which had historically placed approximately 10-15 students with Windrush each year and provided a substantial tuition subsidy for each student placed. (Compl. ¶¶ 31, 42.) Before the bonds were issued, however, Defendants learned that Making Waves was opening its own school approximately five miles from Windrush and that it would no longer place students at Windrush after the 2007-2008 school year. (Compl. ¶¶ 32-34, 45-47.) This meant that Windrush would not only have to compete with Making Waves, a better-endowed charter school eligible for state funding, but would also lose Making Waves' contribution to its enrollment starting in the 2008-2009 school year. (Compl. ¶ 34.) This would substantially reduce Windrush's revenue, thus hampering its ability to repay the bonds. (Compl. ¶¶ 47, 53.) However, this information was not included in the OS for the bonds. (Compl. ¶¶ 54, 55.) Making Waves opened in 2007, shortly after the bonds were issued. (Compl. ¶ 32.) In July 2011, Windrush announced that it did not have sufficient revenue to pay an interest payment

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

2

due and entered into bankruptcy proceedings. The school closed its doors in June 2012. (Compl. ¶ 37.)

Lord Abbett alleges that as the borrower of the bond proceeds, Windrush had a duty to take reasonable action to ensure the OS contained complete and accurate disclosure of all material facts, and that as members of the Board of Trustees, each of the Defendants had a duty to ensure that the OS contained a complete and accurate disclosure of all material facts. (Compl. ¶¶ 27, 28.) Lord Abbett contends that the OS omitted key material facts bearing directly on Windrush's ability to repay the bonds, and that had it known those facts, it would not have purchased the bonds. (Compl. ¶¶ 36, 48-59.) The complaint alleges a single claim for negligent misrepresentation based on the non-disclosure of the Making Waves facts.

Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment pursuant to Rule 56, on the grounds that Lord Abbett's claim was released in a settlement agreement as part of Windrush's bankruptcy proceeding. Defendants argue Lord Abbett's negligent misrepresentation claim is barred by the release of claims and that Plaintiff's complaint must be dismissed with prejudice.

## II. Legal Standards

When reviewing a motion to dismiss for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citation and quotation marks omitted)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged to demonstrate an "entitle[ment] to relief require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

3

1  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (first brackets in original) (quotation marks omitted)
2  (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th
3  Cir. 2001) ("Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."
4  (citation omitted)), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d
5  1119, 1125-26 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, the court may consider extrinsic evidence without converting the motion into a motion for summary judgment in two circumstances. *Id.* (citation omitted); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). First, the court may examine "material which is properly submitted as a part of the complaint." *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). If a document's authenticity is not contested and the complaint "necessarily relies" on it, the court may take that document into account even if it is not physically attached to the complaint. *Id.* (citation and quotation marks omitted). Second, the court may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201. *Id.* at 688-89 (citation and quotation marks omitted); *see Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002).

### III. Defendants' Request for Judicial Notice

In support of their motion, Defendants ask the court to take judicial notice of a number of documents and facts regarding the terms of the bonds and the settlement agreement, as matters of public record pursuant to Federal Rule of Evidence 201. (Defs.' Req. for Judicial Notice ("RJN") 2-3.) Lord Abbett did not object to Defendants' request. Accordingly, the court takes judicial notice of the following documents and facts, and declines to convert Defendants' motion to one for summary judgment: 1) the facts set forth in paragraphs 1 and 5 of the Declaration of Virginia Anne Housum in Support of Objection of Wells Fargo Bank, N.A. as Indenture Trustee to Debtor's Motion for Approval of Cash Collateral; 2) the terms of the Indenture for the bonds; 3) the terms of

the settlement agreement; and 4) the fact of and contents of the order of the United States Bankruptcy Court approving the Settlement Agreement.[2]

## IV. Discussion

### A.  The Indenture and the Settlement Agreement

The bonds were issued pursuant to a July 1, 2007 Indenture between the California Statewide Communities Development Authority, as issuer of the bonds, and Wells Fargo Bank, N.A. ("Wells Fargo"), as Indenture Trustee. (Decl. of Schweitzer In Supp. of Defs.' Mot. to Dismiss ("Schweitzer Decl."), Ex. 2 (Decl. of Housum In Supp. of Objection of Wells Fargo Bank, N.A., as Indenture Trustee to Debtor's Mot. for Approval of Use of Cash Collateral ("Housum Decl."), ¶ 5, Ex. B ("Indenture"), Oct. 3, 2011) Aug. 27, 2012.) Wells Fargo, the Trustee, acted as the representative for the bondholders pursuant to the terms of the Indenture. (Housum Decl. ¶ 5.) Wells Fargo was not a bondholder. (Housum Decl. ¶ 5.) Section 7.04 of the Indenture sets forth the authority of the Trustee to act on behalf of the bondholders:

> The Trustee is hereby irrevocably appointed . . . as trustee and true and lawful attorney-in-fact of the Holders of the Bonds for the purpose of exercising and prosecuting on their behalf such rights and remedies as may be available to such Holders under the provisions of the Bonds, this Indenture, the Loan Agreement, the Deed of Trust or applicable provisions of any law.  Upon the occurrence and continuance of an Event of Default or other occasion giving rise to a right in the Trustee to represent the Bondholders, the Trustee in its discretion may . . . and upon being indemnified to its satisfaction therefor, shall, proceed to protect or enforce its rights or the rights of such Holders by such appropriate action, suit, mandamus or other proceedings as it shall deem most effectual to protect and enforce any such right, at law or in equity, either for the specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or for the enforcement of any other appropriate legal or equitable right or remedy vested in the Trustee or in such Holders under the provisions of the Bonds, this Indenture, the Loan Agreement, the Deed of Trust or applicable provisions of any law . . .

---

[2] Defendants also ask the court to take judicial notice of the terms of the supplement to the settlement agreement that was executed by Windrush and the Indenture Trustee. (RJN ¶ 4.) The court declines to take judicial notice of this document.  First, neither party indicates whether the supplement was ever filed in the United States Bankruptcy Court proceeding, and thus it is not clear whether the supplement is a matter of public record and thus judicially-noticeable pursuant to Federal Rule of Evidence 201. *See Lee*, 250 F.3d at 688-89 (court may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201 without converting the motion into a motion for summary judgment).  Second, the court does not rely upon the terms of the supplement in its analysis, set forth below, of whether the terms of the Indenture unambiguously bar Lord Abbett's claim in this suit.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

> . . .
>
> . . . any such suit, action or proceeding instituted by the Trustee shall be brought in the name of the Trustee for the benefit and protection of all the Holders of such Bonds, subject to the provisions of this Indenture . . .

(Indenture § 7.04.) The Trustee is not a party in this action. (Compl.)

On September 30, 2011, Windrush filed a Chapter 11 voluntary petition for bankruptcy in the Northern District of California. (Decl. of Ough In Supp. of Defs.' Mot. To Dismiss ("Ough Decl."), Ex. A ("Settlement Agreement") recital E, Aug. 27, 2012.) The Trustee, contending that Windrush was in default of its obligations under the bonds, asserted claims against Windrush under the bonds for an aggregate amount in excess of $13,400,000. (Settlement Agreement recital B.)

On December 1, 2011, Windrush and the Trustee entered into a settlement agreement, which was approved by the bankruptcy court on January 12, 2012 and became effective on that day. (Settlement Agreement ¶ 2; Schweitzer Decl. Ex. 3.) The Settlement Agreement included a "General, Mutual Release" between the Trustee and Windrush. (Settlement Agreement ¶ 8.) The release provided as follows:

> As of fifteen (15) days after the School vacates the Real Estate Assets, the School, on the one hand, and the Indenture Trustee on the other hand, . . . shall, and do hereby each waive and release any and all claims, rights and defenses, causes of action and offsets of any nature whatsoever (known or unknown) which each of them now has (or might have) against the other or against any of their respective estates, trustees, directors, officers, faculty, staff, employees, agents, attorneys or representatives, including, but not limited to any claims that might be asserted by the Indenture Trustee in the School's Chapter 11 case and those matters arising from or in any way related to the Bonds and all documents related thereto, *provided, however*, that the release of any claims that the Indenture Trustee may hold against the members of the Board of Trustees of the School or members of the School's staff or against any director's and officer's insurance policies applicable to their management of the School shall not be effective until July 15, 2012 . . . , and only as of that date if and to the extent that the School has vacated the Real Property Assets and has complied with all of its obligations under this Settlement Agreement, except to the extent that such vacation or obligations may be excused by the written consent or breach of the Indenture Trustee. . . . pursuant to this release, the Indenture Trustee shall release all claims under the Bonds and any and all related documents as against the School.

6

United States District Court
For the Northern District of California

(Settlement Agreement ¶ 8) (emphasis in original.)  The Settlement Agreement provided that Windrush's assets had to be surrendered by no later than July 15, 2012.  (Settlement Agreement ¶ 16.)

The release also contained a "carve-out" provision as follows:

> This mutual release shall not affect rights expressly created or preserved by the terms of the Settlement Agreement, nor shall it release any claims expressly alleged in a complaint filed by the Indenture Trustee in a California state or federal court and served upon the School and the defendants therein prior to July 15, 2012, to the extent that such claims are asserted against defendants expressly named in such complaint and served prior to July 15, 2012.

(Settlement Agreement ¶ 8.)

### B. Analysis

Defendants argue that Lord Abbett's claim for negligent misrepresentation was released by the Settlement Agreement, thus barring this action.  Defendants contend that under the terms of the Indenture, the Trustee had broad authority to assert and settle all claims on behalf of the bondholders.  In support of this contention, Defendants point to the language of Section 7.04 of the Indenture, which provides that the Trustee is appointed to exercise on the bondholders' behalf "such rights and remedies as may be available . . . under the provisions of the Bonds, this Indenture, the Loan Agreement, the Deed of Trust *or applicable provisions of any law*."  (Indenture § 7.04) (emphasis added.)  Defendants assert that because this broad language encompasses state law tort claims, the Trustee had the power to pursue and resolve such claims on behalf of the bondholders.  (Defs.' Mot. 7.)  According to Defendants, the Trustee thus had the authority to bind the bondholders to the mutual release contained in the Settlement Agreement, which released all claims or "causes of action and offsets of any nature whatsoever" and "those matters arising from or in any way related to the Bonds,"  including Plaintiff's negligent misrepresentation claim in this lawsuit.  (Defs.' Mot. 9.)

Defendants' arguments regarding the applicability of the carve-out provision of the release are as follows: Windrush fully complied with its obligations under the Settlement Agreement, thereby satisfying the condition precedent to the carve-out.  (Defs.' Mot. 9.)  Given the school's compliance, the release became effective as to the Board Members on July 15, 2012, and any action

7

1 against them had to be filed and served prior to July 15, 2012. Here, the complaint was filed on July
2 13, 2012, but the summons was not issued until July 16, 2012, and was not served until that date or
3 after on each of the Defendants. Thus, without service of the summons until after July 15, 2012, the
4 complaint was not properly served on Defendants by the carve-out deadline. Therefore, the mutual
5 release had already become effective as to Defendants, barring this action. (Defs.' Mot. 9-10.)

6 Lord Abbett argues that the Settlement Agreement could not address or release claims held
7 by the individual bondholders, and thus the current lawsuit is not barred. In support of its position,
8 Lord Abbett argues that the Indenture limits the Trustee's authority to act on behalf of the
9 bondholders, and that the negligent misrepresentation claim falls outside the scope of that authority.
10 (Pl.'s Opp'n 11-13.) As the Trustee did not have authority to assert tort claims on behalf of the
11 bondholders, and the mutual release applies only to claims held by the Trustee, Lord Abbett's
12 negligent misrepresentation claim is not barred. (Pl.'s Opp'n 13-16.) Moreover, Plaintiff argues,
13 even if the Trustee had the authority to release Lord Abbett's tort claim, the carve-out provision's
14 July 15, 2012 release date for claims against the Board Members was not triggered, because
15 Windrush did not comply with all of its obligations under the Settlement Agreement, and because
16 nine Defendants were timely served with the complaint. (Pl.'s Opp'n 9, 18.)

17 The parties do not dispute that the scope of the Trustee's authority is defined by the terms of
18 the Indenture (Pl.'s Opp'n 11; Defs.' Reply 1), nor do they dispute that the release in the Settlement
19 Agreement applies only to claims held by the Trustee. (Pl.'s Opp'n 15-16; Defs.' Reply 4.)
20 Accordingly, whether the release encompasses Lord Abbett's negligent misrepresentation claim
21 turns on the question of whether the Indenture vested the Trustee with the authority to assert that
22 claim on behalf of the bondholders.

23 "The interpretation of contracts under California law involves a complex interplay of
24 questions of fact and questions of law." *City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th
25 Cir. 1993). The court must first determine "whether the contested terms are ambiguous." *Id.*
26 Whether a written contract is ambiguous is a question of law to be decided by the court. *Brobeck,*
27 *Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979), *cert. denied*, 444 U.S. 981
28 (1979). A court interpreting a contract must read it as a whole; all of the provisions should be

8

examined together. *Brinderson–Newberg Joint Venture v. Pac. Erectors Inc.*, 971 F.2d 272, 277 (9th Cir. 1992); *see also* Cal. Civil Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). If the court determines that a contract term is ambiguous, the court must leave the interpretation of the term to the trier of fact. "A motion to dismiss cannot be granted against a complaint to enforce an ambiguous contract." *Westlands Water Dist. v. U.S. Dep't of Interior*, 850 F. Supp. 1388, 1408 (E.D. Cal. 1994) (citing *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)).

Thus, the court must determine whether the Indenture is ambiguous with respect to the Trustee's authority to release a negligent misrepresentation claim on behalf of the bondholders. Turning to the terms of the Indenture, the Trustee's authority is set forth in Article VII, "Events of Default and Remedies of Bondholders," Section 7.04, which provides that the Trustee is appointed "for the purpose of exercising and prosecuting on [behalf of the bondholders] such rights and remedies as may be available to such Holders under the provisions of the Bonds, this Indenture, the Loan Agreement, the Deed of Trust *or applicable provisions of any law*." (Indenture § 7.04) (emphasis added.) Defendants argue that the broad phrase, "applicable provisions of any law," unambiguously includes state tort claims such as negligent misrepresentation, and thus the claim falls squarely under the Trustee's scope of authority. (Def.'s Mot. 7.)

Lord Abbett responds that the "applicable provisions of any law" language is qualified by the documents referenced in the same sentence, i.e. the Bonds, the Indenture, the Loan Agreement, and the Deed of Trust, because such provisions are the legal authority under which those documents may be enforced. (Pl.'s Opp'n 12.) For example, the provisions of the Deed of Trust must be, and were enforced through a foreclosure proceeding. (Settlement Agreement recital D.)

The next sentence in Section 7.04 states that the Trustee, in its discretion, may bring an action on behalf of the bondholders "[u]pon the occurrence and continuance of an Event of Default[3] or other

---

[3] Section 7.01 of the Indenture defines "events of default" as one or more of the following: "(a) default in the due and punctual payment of the principal or Redemption Price of any Bond . . . ; (b) default in the due and punctual payment of any installment of interest on any Bond . . . ; (c) default by the Authority in the observance of any of the covenants, agreements or conditions on its part in this Indenture or in the Bonds contained . . . ; or (d) a Loan Default Event." (Indenture § 7.01.)

9

occasion giving rise to a right in the Trustee to represent the Bondholders." (Indenture § 7.04.) Lord Abbett argues that this language clarifies that the scope of the Trustee's appointment is limited; its authority arises out of an "Event of Default" or other event triggering the Trustee's right to represent the bondholders. Defendants point to the clause, "or other occasion giving rise to a right in the Trustee to represent the Bondholders," as broadening the Trustee's authority to act on claims that are not tethered to an "Event of Default."

In support of its position, Lord Abbett also points to Section 7.06, "Limitation on Bondholders' Right to Sue," which contains the same "applicable provisions of any law" language that appears in Section 7.04. Section 7.06 provides that bondholders have no right to institute any action for the enforcement of any right or remedy under the "Indenture, the Loan Agreement, the Deed of Trust or *applicable provisions of any law* with respect to such Bond, unless (1) such Holder shall have given to the Trustee written notice of the occurrence of an *Event of Default*." (Indenture § 7.06) (emphasis added.) According to Lord Abbett, this language clarifies that the limitation on bondholders' rights applies only to suits arising out of an Event of Default under the Indenture. (Pl.'s Opp'n 13-14.) Additionally, Section 7.06 requires the bondholders to provide written notice to the Trustee of an Event of Default as a condition precedent to bringing their own suit. Lord Abbett argues that such a condition is impossible to satisfy for a negligent misrepresentation claim, because that claim does not arise out of an Event of Default and would be viable *regardless* of whether Windrush defaulted on the bonds. Accordingly, Lord Abbett urges the court to construe Section 7.04 in accord with Section 7.06, and find that the Trustee's authority only extends to claims involving Events of Default, and not to tort claims. (Pl.'s Opp'n 14.)

Finally, Lord Abbett argues that Defendants' contention that the Trustee had exclusive authority to assert all bondholders' claims, including the negligent misrepresentation claim, would effectively deny Lord Abbett and any other bondholder a remedy for purchasing the bonds in reliance on false and misleading statements in the OS. This is because the Trustee could not assert such a claim, given that it did not purchase any bonds. (Housum Decl. ¶ 5; Pl.'s Opp'n 14-15.)

Upon examination, the court concludes that the relevant provisions of the Indenture are ambiguous. Defendants correctly note that the Trustee's authority to bring an action arises upon an

10

event of default "*or other occasion* giving rise to a right in the Trustee" to represent the bondholders, thus suggesting that the Trustee's authority is *not* solely limited to claims involving events of default. (Defs.' Reply 3 (quoting Indenture § 7.04) (emphasis added).) However, Lord Abbett's argument that it would be impossible for it or any bondholder to satisfy Section 7.06's requirement of providing written notice to the Trustee of an Event of Default in order to bring a claim of negligent misrepresentation is well taken. Such a claim would be possible regardless of whether the school defaulted. Moreover, Section 7.09 of the Indenture provides that its remedies are not exclusive, but rather are "cumulative and in addition to any other remedy given hereunder or now or hereafter existing at law or in equity or otherwise." (Indenture § 7.09.) Reading all of the terms of the Indenture together, as the court is required to do, the court finds that the Indenture is ambiguous on the question of the Trustee's authority, because it is susceptible to the reasonable interpretations offered by each party. *See Whittlestone, Inc. v. Handi-Craft Co.*, No. C 08-04193 SBA, 2012 WL 3939629, at *7 (citing *Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005) ("A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation.") (internal quotation marks omitted). Thus, the trier of fact ultimately must decide whether Lord Abbett's claim for negligent misrepresentation falls within the scope of the Trustee's authority, and dismissal is inappropriate.[4] *See Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) (ambiguity in a contract raises a fact question regarding the parties' intent).

### V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated: October 31, 2012

DONNA M. RYU
United States Magistrate Judge

---

[4] In light of the court's determination that the provision at issue is ambiguous, thus precluding dismissal on the grounds that Lord Abbett's claim was released by the Settlement Agreement between the Trustee and Windrush, the court does not reach the parties' arguments regarding the applicability of the carve-out provision of the Settlement Agreement.

11