UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORD ABBETT MUNICIPAL INCOME FUND, INC., | No. C-12-03694 DMR |
| Plaintiff(s), | **ORDER ON SEPT. 25, 2013 JOINT DISCOVERY LETTER** |
| v. | |
| JOANN ASAMI, | |
| Defendant(s). | |

Before the court is the parties' September 25, 2013 joint letter setting forth the parties' discovery dispute regarding Plaintiff Lord Abbett Municipal Income Fund, Inc.'s ("Lord Abbett") and non-party Wells Fargo Bank's claim of attorney-client privilege as to certain documents. [Docket No. 79 (Jt. Letter).] On October 7, 2013, the court issued an order vacating the hearing on the joint letter pursuant to Civil Local Rule 7-1(b). In light of the parties' timing concerns given the deposition schedule, the court also set forth an abbreviated ruling on the joint letter, noting that the court would issue a detailed written order. [Docket No. 83.] The court's full order on the joint letter is set forth below.

## I. Background

Plaintiff Lord Abbett Municipal Income Fund, Inc., on behalf of its series Lord Abbett High Yield Municipal Bond Fund, Lord Abbett National Tax-free Income Fund and Lord Abbett

1  California Tax-Free Income Fund (collectively, "Plaintiff" or "Lord Abbett"), asserts a claim of
2  negligent misrepresentation against eighteen former members of the Board of Trustees of Windrush
3  School ("Windrush"), a private school located in El Cerrito, California, arising from a 2007 bond
4  offering by Windrush.  The bonds were issued pursuant to an Indenture administered by non-party
5  Wells Fargo Bank ("Wells Fargo") acting as Indenture Trustee.  Non-party Virginia Housum served
6  as acting trustee on behalf of Wells Fargo.  Lord Abbett was the majority bondholder.
7       Windrush defaulted on the bonds in July 2011.  On August 30, 2011, Wells Fargo filed a
8  lawsuit against Windrush alleging breach of contract and seeking foreclosure and the appointment of
9  a receiver ("the initial lawsuit").  On September 30, 2011, Windrush filed for bankruptcy.  During
10 the bankruptcy proceeding, Housum was deposed in her capacity as acting trustee.  In December
11 2011, Wells Fargo and Windrush entered into a settlement agreement by which Windrush agreed to
12 transfer property to Wells Fargo.  Wells Fargo took possession of the property as collateral for the
13 bonds under the settlement agreement, holding the property for the benefit of the bondholders.  Lord
14 Abbett, as majority bondholder, had the right to direct the trustee with respect to the possession and
15 sale of the collateral.  In July 2012, Lord Abbett filed the present suit against the Board Members,
16 bringing a single claim of negligent misrepresentation based on the Board Members' alleged failure
17 to disclose certain material facts during the sale of the bonds.
18      The current discovery dispute centers around Lord Abbett and Wells Fargo's claim of
19 attorney-client privilege and the common interest doctrine as to certain documents they have
20 withheld from production to the Board Members.  The documents consist of communications
21 between Lord Abbett and other bondholders, Wells Fargo, and counsel from May 2011 through
22 2012, with the majority "[taking] place during the impending default of the Bonds and the
23 subsequent bankruptcy proceeding." (Jt. Letter 8.)  The Board Members challenge Lord Abbett and
24 Wells Fargo's claims of privilege with respect to certain emails regarding this litigation, arguing that
25 the common interest doctrine does not apply.  (Jt. Letter 3.)  In addition, the Board Members argue
26 that Virginia Housum waived the attorney-client privilege as to Wells Fargo and Lord Abbett
27 regarding communications about the initial lawsuit and the bankruptcy proceeding when she
28 testified during Windrush's bankruptcy proceeding.  (Jt. Letter 5.)  The Board Members ask the

2

court to order the production of all documents related to the subjects about which Housum testified and to require that Lord Abbett and Wells Fargo's witnesses testify as to those subjects at deposition.

## II. Legal Standards

In this diversity action, California law governs resolution of issues arising out of Lord Abbett and Wells Fargo's invocation of the attorney-client privilege. Fed. R. Evid. 501. Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code § 952. The party claiming a privilege bears the burden to show that the evidence it seeks to suppress falls within the terms of an applicable statute. *Great American Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009); *HLC Props., Ltd. v. Superior Court*, 35 Cal. 4th 54, 59 (2005). Because evidentiary privileges prevent the admission of relevant and otherwise admissible evidence, they should be narrowly construed. *People v. Sinohui,* 28 Cal.4th 205, 212 (2002).

Under California Evidence Code section 912, a party waives the attorney-client privilege if it "has disclosed a significant part of the communication or has consented to such disclosure made by anyone." Cal. Evid. Code § 912(a). Waiver occurs where disclosure is made to "strangers to the attorney-client consultation" or to persons who "possess interests adverse to the client." *Ins. Co. of N. Am. v. Superior Court*, 108 Cal. App. 3d 758, 766 (1980). However, California recognizes the "common interest" doctrine, "appropriately characterized . . . as a nonwaiver doctrine."[1] *OXY Res. Cal. LLC v. Superior Court*, 115 Cal. App. 4th 874, 889 (2004). The doctrine "allows disclosure between parties, without waiver of privileges, of communications protected by the attorney-client privilege or attorney work-product doctrine where the disclosure is necessary to accomplish the purpose for which the legal advice was sought." *Citizens for Ceres v. Superior Court*, 217 Cal. App. 4th 889, 914 (2013) (citation omitted). The common interest doctrine "does *not* mean there is 'an

---

[1] The common interest doctrine is also referred to as the "joint defense doctrine." *See In re Juniper Networks, Inc. Sec. Litig.*, Nos. C 06-4327 JW (PVT), C 08-00246 JW (PVT), 2009 WL 4644534, at *1 (N.D. Cal. Dec. 9, 2009).

expanded attorney-client relationship encompassing all parties and counsel who share a common interest." *Id*. (citing *OXY*, 115 Cal. App. 4th at 889) (emphasis in original). As one court explained, "'[f]or the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter – and that the communications be made to advance their shared interest in securing legal advice on that common matter.'" *OXY*, 115 Cal. App. 4th at 891 (citing *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 163 F.R.D. 574, 581 (N.D. Cal. 1995)); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("The common interest privilege . . . applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." (citation and quotation marks omitted)). Therefore, under California law, "the [attorney-client or work product] privilege survives disclosure to a party with a common interest only if it is necessary to accomplish the privilege holder's purpose in seeking legal advice." *Citizens for Ceres*, 217 Cal. App. 4th at 916.

A party seeking to rely on the common interest doctrine "must first establish that the communicated information would otherwise be protected from disclosure by a claim of privilege." *OXY*, 115 Cal. App. 4th at 890. "The next step in the analysis is to determine whether disclosing the information to a party outside the attorney-client relationship waived any applicable privileges." *Id*.

### III. Discussion

#### A. Common Interest Doctrine

The challenged documents are described on Lord Abbett's privilege log as communications between Lord Abbett and other bondholders, Wells Fargo, and counsel, "discussing legal strategy/attorney client advice re: litigation." (Jt. Letter 3.) The communications "are about Lord Abbett's present action and not about the initial lawsuit or bankruptcy." (Jt. Letter 3.) According to Lord Abbett, the communications at issue "discuss [Wells Fargo's] fiduciary duties as a trustee, including the collateral for the bonds, Ms. Housum's communications with other Bondholders regarding potential litigation, Ms. Housum's assistance to the Bondholders in investigating potential claims, interpretation of the Trust Indenture, as well as communications regarding the bankruptcy proceeding and the settlement agreement reached in the bankruptcy proceeding." (Jt. Letter 8.)

1  Lord Abbett argues that all of the communications are privileged pursuant to the attorney-client
2  privilege and the common interest doctrine because Lord Abbett "continued to share a common legal
3  interest with [Wells Fargo] as [it] investigated potential legal claims against the Board Members and
4  the underwriter of the Bonds, because it is the trustee's obligation to ensure the Bondholders are
5  repaid under the Indenture." (Jt. Letter 8.)

6      The Board Members do not dispute that the common interest doctrine applies to
7  communications among the bondholders and Wells Fargo related to the default and bankruptcy.[2] (Jt.
8  Letter 8.) They argue that the common interest doctrine does not extend to protect from disclosure
9  communications that are unrelated to the bondholders and Wells Fargo's common claims as
10 creditors of Windrush. According to the Board Members, communications regarding the negligent
11 misrepresentation claim at issue in this action are unrelated to the bondholders' and Wells Fargo's
12 creditor claims, and therefore, Lord Abbett and Wells Fargo waived the attorney-client privilege
13 when they communicated with each other regarding this lawsuit. (Jt. Letter 5.)

14      In order for the common interest doctrine to apply, Lord Abbett must first establish that the
15 communications "would otherwise be protected from disclosure" by the attorney-client privilege.
16 *See OXY*, 115 Cal. App. 4th at 890. The Board Members do not dispute that the privilege would
17 apply, absent the disclosure of the communications to third parties. Therefore, Lord Abbett and
18 Wells Fargo must "have in common an interest in securing legal advice related to the same matter,"
19 and "the communications [must] be made to advance their shared interest in securing legal advice on
20 that common matter." *See id.* at 891. The Board Members argue that the common legal interest
21 between Lord Abbett and Wells Fargo in connection with the initial lawsuit and the bankruptcy
22 proceedings "was to recover the bond debt owed to the bondholders under the indenture." (Jt. Letter
23 3.) However, the current action is based on a tort claim of negligent misrepresentation; it is not an
24 action to recover the bond debt. Lord Abbett has taken the position in this litigation that this claim
25 does not arise under the Indenture. Therefore, because Wells Fargo has no legal interest in whether

---

[2] However, they argue that such communications are nonetheless discoverable on the grounds that Housum waived the attorney-client privilege by testifying during the bankruptcy proceeding; see discussion *infra*.

5

the Board Members made misrepresentations prior to Lord Abbett's purchase of the bonds, communications on that subject are not subject to the common interest doctrine.

The court agrees. As Lord Abbett asserts, "it is [Wells Fargo's] obligation to ensure the Bondholders are repaid under the Indenture." (Jt. Letter 8.) The common legal interest between Lord Abbett and Wells Fargo is to recover the bond debt owed to Lord Abbett and the other bondholders. Yet repayment is not at issue in this lawsuit, in which Lord Abbett seeks tort damages for the Board Members' alleged misrepresentations prior to the sale of the bonds. In fact, in its opposition to the Board Members' motion to dismiss, Lord Abbett asserted that Wells Fargo did *not* have an interest in the issues presented in this action. Specifically, in arguing that a release of claims in the bankruptcy settlement agreement did not bar its present action, Lord Abbett expressly claimed that its negligent misrepresentation claim was outside the scope of Wells Fargo's authority as the trustee under the Indenture:

> The Trustee is not, however, a purchaser of the Bonds and is not authorized to bring all claims (such as tort claims) that might be brought by the Bondholders in connection with their purchase of the Bonds. Here, Plaintiff's negligent misrepresentation claim relates to material omissions and misleading statements . . . on which Plaintiff relied in deciding to purchase the Bonds. *The claim does not arise out of any alleged breach of Windrush's obligations under the Bonds or the Indenture*, but rather out of Defendants' failure to properly disclose certain material information in connection with the sale of the bonds. Indeed, Lord Abbett could bring a negligent misrepresentation claim under these circumstances whether or not Windrush defaulted on the Bonds.

(Pl.'s Opp'n to Defs.' Mot. to Dismiss 10 (emphasis added).) In support of its opposition, Lord Abbett submitted a declaration by Virginia Housum in which she stated that "[Wells Fargo] was not a buyer of the Bonds and therefore does not hold any claims related to the sale of the Bonds to the Bond purchasers." (Housum Decl., Sept. 14, 2012, ¶ 6.) As Wells Fargo does not have an interest in Lord Abbett's negligent misrepresentation claim, Lord Abbett and Wells Fargo do not "have in common an interest in securing legal advice" related to this matter. *See OXY*, 115 Cal. App. 4th at 891. Therefore, the common interest doctrine does not apply to their communications regarding this litigation.

Lord Abbett argues that the fact that Wells Fargo did not have authority under the Indenture to bring the claim in this action is not dispositive of the issue of common interest. According to

6

1  Lord Abbett, the common interest doctrine "protects communications between parties with a
2  common legal interest, period." (Jt. Letter 9.) This is an overstatement of the doctrine. The
3  common interest doctrine "does not mean there is 'an expanded attorney-client relationship
4  encompassing all parties and counsel who share a common interest." *Citizens for Ceres*, 217 Cal.
5  App. 4th at 916. Rather, Lord Abbett must show that "the two parties have in common an interest in
6  securing legal advice *related to the same matter* – and that the communications [were] made to
7  advance their shared interest in securing legal advice on that matter." *OXY*, 115 Cal. App. 4th at 891
8  (emphasis added). Lord Abbett has not met either burden. It is undisputed that Lord Abbett and
9  Wells Fargo have a common interest in ensuring that the bondholders are repaid under the Indenture,
10 and therefore the doctrine applies to protect communications related to Windrush's default and the
11 bankruptcy proceeding. However, Lord Abbett has not explained why Wells Fargo has an interest in
12 *this* action, which has nothing to do with repayment of the bonds.

13 Finally, Lord Abbett cites two cases in support of its claims that bondholders and their
14 trustees "share a common interest." *See U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls,*
15 *LLC*, No. Civ.A. 112-N, 2005 WL 2037353, at *2 (Del. Ch. Jun. 9, 2005); *U.S. Bank Nat'l Ass'n v.*
16 *APP Int'l Fin. Co.*, 33 A.D. 3d 430, 431 (N.Y. 2006). Yet these cases do not hold that a bondholder
17 and trustee share a common interest *in all matters*. In fact, in *U.S. Timberlands*, the court noted that
18 there are situations where their interests diverge, such as where a trustee seeks indemnification from
19 bondholders for bringing suit. The common interest doctrine does not apply to protect
20 communications where those interests diverge. 2005 WL 2037353, at *2 (ordering production of
21 documents containing communications regarding indemnification). Here, as Wells Fargo has no
22 legal interest in this action, the common interest doctrine does not apply to shield communications
23 about the action from discovery.

### B. Waiver Based on Housum's Testimony

25 The Board Members next argue that although the communications between Wells Fargo and
26 Lord Abbett regarding the initial lawsuit and the bankruptcy proceeding are subject to the common
27 interest doctrine, they are nevertheless discoverable because Housum waived the attorney-client
28 privilege when she testified about those matters during the bankruptcy proceeding.

7

1  //

2       Lord Abbett argues that the communications were not waived by Housum's testimony,
3 because waiver requires the consent of all parties. *See, e.g., In re Juniper Networks, Inc. Sec. Litig.*,
4 2009 WL 4644534, at *1 (noting that "[i]t is fundamental that the 'joint defense privilege cannot be
5 waived without the consent of all parties to the defense.'" (citation omitted)). According to Lord
6 Abbett, even though Housum testified about conversations she had with the bondholders and their
7 counsel, no bondholder was present at the deposition and no bondholder authorized the disclosure of
8 any communications protected by the common interest doctrine. Therefore, there was no waiver of
9 attorney-client privilege under these circumstances.

10       It is not clear on this record that the bondholders consented to Housum's disclosures of
11 communications with them at deposition. The Board Members argue that Housum was acting on
12 Lord Abbett's behalf when she testified, and that she was its "agent and representative." (Jt. Letter
13 6.) They also argue that the privilege logs show that during the bankruptcy proceedings, Lord
14 Abbett communicated with Wells Fargo almost daily, suggesting that Lord Abbett was in fact
15 managing the bankruptcy proceeding. Even if Lord Abbett was an integral part of Wells Fargo's
16 management of the bankruptcy proceeding, this does not mean that it specifically authorized
17 Housum to testify as to its discussions with her. For this reason, the court declines to find that Lord
18 Abbett consented to waiver of the joint defense privilege through Housum's testimony.

19       However, the court finds that Housum's deposition testimony constitutes a waiver by *Wells*
20 *Fargo* of the attorney-client privilege with respect to the communications about which she testified.
21 *See* Cal. Evid. Code § 912(a); *see also Ins. Co. of N. Am.*, 108 Cal. App. 3d at 766. This is because
22 even where the common interest doctrine applies, "a party always remains free to disclose his own
23 communications." *Cargill Inc. v. Budine*, No. CV-F-07-349-LJO-SMS, 2008 WL 2856642, at *4
24 (E.D. Cal. Jul. 21, 2008). Since Housum purposefully revealed the subject of the communications,

the Board Members may have the opportunity to question her regarding those specific conversations.[3] Any questioning of Housum must be within specific limits, and the Board Members may not question other parties to the communications, including Lord Abbett, as to the substance thereof. "[W]aiver of the attorney-client privilege 'relating to information shared in joint defense communications by one party to such communications will not constitute a waiver by any other party to such communications.'" *Id.* (citing *Western Fuels Ass'n Inc. v. Burlington N. R.R. Co.*, 102 F.R.D. 201, 203 (D. Wyo. 1984)). The common interest doctrine "prevents disclosure of a communication made in the course of preparing a joint defense *by the third party to whom it was made*." *Id.* (citing *In re Grand Jury Subpoena (Newparent)*, 274 F.3d 563, 572-73 (1st Cir. 2001)) (quotation marks omitted) (emphasis added). Accordingly, Housum may not be questioned as to the statements made by Lord Abbett and the other bondholders who participated in the communications. As they did not consent to her disclosures, the privilege continues to extend to them. *See United States v. Balsiger*, No. 07-CR-57, 2011 WL 10879630, at *9 (E.D. Wis. May 11, 2011) (holding that "any non-waiving member of the joint defense may still assert the common interest privilege over not only his own communications, but also those communications by other members that reveal his own otherwise-privileged communications.").

## IV. Conclusion

For the foregoing reasons, Lord Abbett and Wells Fargo shall immediately produce to the Board Members all documents withheld on the basis of attorney-client privilege and the common interest doctrine regarding this litigation, and the Board Members may question them as to such

---

[3] It is not clear whether the Board Members contend that Wells Fargo's waiver should extend beyond the specific communications about which Housum testified, to all communications regarding the initial lawsuit and the bankruptcy proceeding. In any event, the court finds that the Board Members may only question her regarding the conversations about which she testified. *See Sony Computer Entm't Am., Inc. v. Great Am. Ins. Co.*, 229 F.R.D. 632, 635 (N.D. Cal. 2005) (holding that "[u]nder California law, 'the scope of [a] waiver should be determined primarily by reference to the purpose of the privilege . . . . [¶] . . . The scope of [the] waiver is narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver.'" (quoting *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal. App. 3d 1047, 1052 (1987) (brackets in original)); *see also Emp'r Ins. of Wausau v. Cal. Water Serv. Co.*, No. C-06-3002 PVT, 2007 WL 2947423, at *4 n.3 (Oct. 9, 2007) (noting that California law "jealously guards the attorney-client privilege and interprets all waivers narrowly").

communications. The Board Members may also question Virginia Housum and Wells Fargo regarding the communications about which she previously testified.

IT IS SO ORDERED.

Dated: October 11, 2013



_____
DONNA M. RYU
United States Magistrate Judge